IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ALFRED EUGENE SIMPSON | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv338 |
| DIRECTOR, TDCJ-CID | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>

Petitioner Alfred Eugene Simpson, a prisoner currently confined within the Texas Department of Criminal Justice (TDCJ), through counsel, filed this habeas action challenging his Smith County, Texas, conviction. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the petition.

For reasons explained below, the Court recommends that the petition be denied, the case dismissed with prejudice, and that Petitioner Simpson be denied a certificate of appealability *sua sponte*.

**I. Procedural History**

On February 8, 2018, and after a jury trial, Simpson was sentenced to fifteen years imprisonment for one counsel of aggravated assault with a deadly weapon—to wit, a pole and walking stick, (Dkt. #7-22, pg. 1259). His offense was enhanced to a first-degree felony. Simpson filed a direct appeal, and the appellate court affirmed the judgment. *See Simpson v. State*, 2018 WL 5797623, at *1 (Tex. App.—Tyler, 2018, pet ref'd). The Texas Court of Criminal Appeals refused his petition for discretionary review.

Simpson filed a state habeas corpus application, with an attached memorandum of law, on March 21, 2019, (Dkt. #7-22, pg. 1277). Judge Kennedy—who also presided over his trial—recommended that the petition be denied after receiving an affidavit from Simpson's trial counsel, Ms. Lacy, and entering Findings of Fact and Conclusions of Law. *Id*. at pg. 1221. The Texas Court of Criminal Appeals denied Simpson's habeas application on August 21, 2019, without a written order on the findings of trial court, (Dkt. #7-20, pg. 1217). Simpson filed this federal habeas petition on June 22, 2020, through counsel, (Dkt. #1).

**II. Simpson's Habeas Petition**

Simpson raises one ground for relief: Trial counsel was ineffective or failing to strike Juror number 35. Specifically, he maintains that:

> During voir dire, the prosecutor questioned the jurors about potential bias. Juror 35 indicated that he knew most of the State's witnesses and that he was a former police officer. He equivocated about whether he could listen to the evidence, and said that he would have to hear it first. The prosecutor asked if anything concerning Juror 35's experience as an arresting officer would cause bias or prejudice, to which Juror 35 responded, "Probably." Trial counsel did not ask any follow-up questions despite these revelations nor did she use any peremptory or for-cause strikes to eliminate Juror 35. Juror 35 ultimately served on the jury as foreperson. See attached memo.

(Dkt. #1, pg. 6). Simpson asserts that the failure to strike a biased juror, Juror 35, constituted ineffective assistance and violated clearly established law.

Simpson's trial counsel, Ms. Lacy, filed an affidavit in response to his state habeas application—stating that Simpson failed to identify the juror whom he believed to be biased and explained that she assumed it was another venireperson who approached the bench. *Id*. at pg. 8. Simpson argues that Ms. Lacy neither addressed Juror 35 nor explained any strategy as it would relate to her decision to forgo questioning or striking Juror 35. *Id*.

Simpson further states that the record contradicts the state habeas court's findings. The state habeas court, in recommending a denial of his writ application, explained that Simpson complained

of unspecified errors and an unspecified juror—despite how Simpson's attached memorandum of law specifically identified Juror 35.

**III. Respondent's Answer and Simpson's Response**

After being ordered to do so, Respondent filed an answer addressing Simpson's petition, (Dkt. #8). Respondent urges this Court to deny the petition, maintaining that counsel was not ineffective. It asserts that Simpson failed to overcome the presumption of correctness under the AEDPA, and that the state court implicitly found that Juror 35 was not biased. At worst, Respondent alleges, Juror 35 "gave the impression that he was unsure." Respondent also argues that Simpson failed to show ensuing prejudice—as the evidence against him was overwhelming.

Simpson filed a response, (Dkt. #9). He asserts that the Respondent "downplays" the seriousness of his claim and the "indications of Juror 35's bias." Considering the totality of the circumstances, Simpson contends, Juror 35's responses were inadequate—particularly his response that concerning having to listen to the case first. He cites *Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006) in support of his argument. Finally, Simpson asserts that—as in *Virgil*—"the error that [his] trial counsel made is so serious that it destroys any confidence in the process he received."

**IV. Standard of Review**

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation

omitted). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Under the AEDPA, which imposed several habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). The AEDPA imposes a "highly deferential standard for evaluating state court rulings," which demands that federal courts give state court decisions "the benefit of the doubt." *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201-02 (5th Cir. 2016) ("Federal review under the AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe that the state court reached the wrong result. Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim."). Given the highly deferential standard, a state court's findings of fact are entitled to a presumption of correctness and a petitioner can only overcome that burden through clear and convincing evidence. *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007).

To show that trial counsel was ineffective, Simpson must demonstrate both deficient performance and ensuing prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). In evaluating whether an attorney's conduct was deficient, the question becomes whether the

4

attorney's conduct fell below an objective standard of reasonableness based on "prevailing norms of practice." *See Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2016).

Moreover, to establish prejudice, the petitioner must show that there is a reasonable probability that—absent counsel's deficient performance—the outcome or result of the proceedings would have been different. *Id.*; *see also Reed v. Stephens*, 739 F.3d 753, 773 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687)). It is well-settled that a "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694. Importantly, the petitioner alleging ineffective assistance must show both deficient performance and prejudice. *See Charles v. Stephens*, 736 F.3d 380, 388 (5th Cir. 2013) ("A failure to establish either element is fatal to a petitioner's claim.") (internal citation omitted). Given the already highly deferential standard under the AEDPA, establishing a state court's application whether counsel was ineffective "is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Charles*, 736 F.3d at 389 ("Both the *Strickland* standard and the AEDPA standard are highly deferential, and when the two apply in tandem, review is doubly so.") (internal quotations and citation omitted).

**V. Discussion and Analysis**

As mentioned, Simpson asserts that his trial counsel was ineffective for failing to strike Juror 35 during voir dire. He maintains that Juror 35 was actually biased and served on the jury, and that the state habeas court's findings were unreasonable. Simpson contends that prejudice is presumed in his case—as "[w]hen a biased person serves on the jury, the results of the trial are unreliable," (Dkt. #9, pg. 7).

The analysis must start with the voir dire in Simpson's case. The relevant portions of voir dire questioning of Juror 35 appear as follows:

```
 1                     Juror Number 35, how do you know Ms. Lacy?
 2                     VENIREPERSON 35:  I was a police officer of
 3   twenty years.
 4                     MR. PUTMAN:  Okay.  So as a defense
 5   attorney, you used to be a police officer, you knew her
 6   professionally?
 7                     VENIREPERSON 35:  Yeah, I know a lot of
 8   people in here professionally.
 9                     MR. PUTMAN:  Sure.
10                     Well, anything about knowing Ms. Lacy, or
11   anybody else that you may know in this courtroom, cause
12   you to have a bias or prejudice in this case?
13                     VENIREPERSON 35:  Other than my experience
14   in law enforcement and having to deal with cases like
15   this.
16                     MR. PUTMAN:  Sure.  But could you
17   set -- obviously, no one can set their life experience
18   aside --
19                     VENIREPERSON 35:  It would have to depend
20   on the case.
21                     MR. PUTMAN:  Okay.  Do you think you could
22   listen to the facts from the witness stand and base your
23   verdict only on that evidence?
24                     VENIREPERSON 35:  I would have to listen to
25   it first.
```

                                                                28

```
 1                     MR. PUTMAN:  Fair enough.  Thank you very
 2   much.
```

(Dkt. #7-9, pg. 27-28).

Turning to questions concerning whether venire members knew individuals from local law enforcement, Juror 35 remarked the following:

```
23                  Juror Number 35, I imagine you know most of
24  them?
25                  VENIREPERSON 35:  Probably.

 1                  MR. PUTMAN:  Probably.
 2                  Could you -- having worked with them, could
 3  you listen to their testimony like you would any other
 4  witness?
 5                  VENIREPERSON 35:  Well, I would listen to
 6  them, yeah.  But --
 7                  MR. PUTMAN:  Sure.
 8                  VENIREPERSON 35:  -- I have worked with
 9  them for -- off and on, and we took care of each other,
10  so...
11                  MR. PUTMAN:  Sure.  Absolutely.  Thank you,
12  sir.
```

*Id*. at pg. 31-32. The State then elicited responses concerning whether venire members, close friends, or family members had interactions with local law enforcement:

```
21                  But is there anyone -- the question will
22  be, when I ask you to raise your cards in a minute, have
23  you, a close friend, or a family member been charged
24  with or arrested for anything more serious than a
25  Class C misdemeanor.
```

7

```
22                  Juror Number 35?
23                  VENIREPERSON 35:  Both.
24                  MR. PUTMAN:  Okay.  Smith County?
25                  VENIREPERSON 35:  Yeah.
```

                                                                    94

```
 1                  MR. PUTMAN:  Can you tell us what the
 2   charges were?
 3                  VENIREPERSON 35:  Well, there were
 4   multiple.  I made arrests on a lot of them.
 5                  MR. PUTMAN:  Okay.  Do you feel like they
 6   were treated fairly by law enforcement?
 7                  VENIREPERSON 35:  Well, I hope so.  I did
 8   the wrecks.
 9                  MR. PUTMAN:  Fairly by the DA's office?
10                  VENIREPERSON 35:  As far as I know.  Yeah,
11   I would say so.
12                  MR. PUTMAN:  Anything about those cases
13   cause you to have a bias or prejudice in this case?
14                  VENIREPERSON 35:  Possibly.
15                  MR. PUTMAN:  Okay.  Thank you, sir.
```

*Id.* at pg. 93-94. Finally, Ms. Lacy asked the venire members which situation they believed was more egregious: a person who is found guilty but is innocent or a person who gets away with it—to which Juror 35 responded as follows:

```
 8                  VENIREPERSON 35:  I would have to say both.
 9                  MS. LACY:  All right.
```

8

*Id*. at pg. 146. Juror 35 was selected to be on the jury and ultimately served as the foreperson.

One of the bedrock principles in our criminal justice system is that before a person's liberty can be deprived, guilt must be found, beyond a reasonable doubt, by an *impartial* decisionmaker. *See Virgil*, 446 F.3d at 605 (emphasis added). The Sixth Amendment provides in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." US Const. amend. VI. The Sixth Amendment therefore provides that the right to a fair trial guarantees the criminally accused a fair trial by a panel of impartial or "indifferent" jurors. *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).

No hard-and-fast formula dictates the necessary depth or breadth of voir dire. *Skilling v. United States*, 561 U.S. 358, 368 (2010). A defense attorney's method of voir dire is strategic and entitled to deference—and, as such, "cannot be the basis for a claim of ineffective assistance unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness." *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995) (quotations and citations omitted).

With respect to whether the failure to strike an allegedly partial juror constitutes deficient performance, a court must first evaluate whether the juror at issue was actually biased. *Virgil*, 446 F.3d at 608-10. The bias question centers on a juror's own indication that he has "such fixed opinions that [he] could not judge impartially respondent's guilt." *Siegfried v. Greer*, 372 F. App'x 536, 539 (5th Cir. 2010) (quoting *Patton v. Yount*, 467 U.S. 1025, 1035 (1984)). Moreover, the bias inquiry evaluates whether the juror's "views would prevent or substantially impair the performance of his or her duties as a juror in accordance with his or her instructions and oath." *United States v. Scott*, 159 F.3d 916, 925-26 (5th Cir. 1998). Impartiality is constitutionally

satisfied if jurors can "lay aside [their] impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723.

Consistent with these concerns, federal courts have repeatedly held that a defendant's right to an impartial jury does not mean that jurors who have preconceived notions cannot be validly seated. *See Thomas v. Lumpkin*, 995 F.3d 432, 444 (5th Cir. 2021); *Geralds v. Attorney Gen., Fla.*, 855 F. App'x 576, 597 (5th Cir. 2021) (Mem) ("But this principle does not mean that jurors must have zero prior exposure to the facts and issues involved in a case."). The Supreme Court explained as follows:

> To hold that the mere existence of any preconceived notion as to guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin*, 366 U.S. at 723. The Fifth Circuit highlighted that "[t]he reality is that the role of the juror in our government would be weakened if our system expected each juror to lack any real-world sense." *Virgil*, 446 F.3d at 609.

The state habeas court in Simpson's case entered findings of fact and conclusions of law on this claim. Specifically, the court ruled and reasoned as follows:

> 14. Applicant's third ground generally complains that his trial attorney, Hon. La Juanda Lacy, was ineffective where she failed: (1) to object to unspecified errors; and (2) to challenge any unnamed juror during voir dire on the basis of some unspecified bias against him.
>
> 15. Ms. Lacy has provided an affidavit in which she disputes these claims.
>
> 16. Based upon the Court's experience and recollections of the trial in this case and upon Ms. Lacy's years of service as a contract attorney in this Court, the Court finds her to be a credible witness and finds her affidavit to be credible evidence.
>
> . . .

> 18. Applicant has not alleged any facts or authority showing that Ms. Lacy rendered him ineffective assistance during voir dire or during trial.
>
> 19. Applicant has not met his two-pronged burden under *Strickland* to show that Ms. Lacy rendered him ineffective assistance of counsel or that he suffered resultant prejudice.

(Dkt. #7-23, pg. 1327-28).

The state habeas court's findings and conclusion of law are entitled to a presumption of correctness on federal habeas review and Simpson has the burden of overcoming this presumption. *See Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990).

Title 28 U.S.C. § 2254(e)(1) provides the following:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Under this statute, then, only one avenue exists in which a federal court can ignore state fact findings: When the petitioner rebuts the presumption of correctness by clear and convincing evidence. Because the court denied relief on the merits of Simpson's claims, he is bound by 28 U.S.C. § 2254 and must show that the state court's adjudication of his claims resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law—as established by the Supreme Court, or resulted in a decision based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007).

The issue before the court, here, is whether it was objectively unreasonable for the state habeas court to conclude that defense counsel's representation of Simpson during voir dire was constitutionally adequate. *Thomas*, 995 F.3d at 446. In evaluating this, federal courts are to "look for any reasonable justification for the state court's decision." *Id.* (internal citation omitted); see

*also Harrington*, 562 U.S. at 103 ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in exiting law beyond any possibility for fairminded disagreement."). The presumption of correctness afforded to the state courts extends to both explicit and implicit findings—or "those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Thomas*, 994 F.3d at 446 (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001)).

Here, a review of the trial record, pleadings, and applicable law show that the state habeas court's findings—both explicit and implicit—that Simpson's trial counsel was not ineffective were not objectively unreasonable. In other words, the state habeas court's findings were not so lacking in justification beyond possibility for fairminded disagreement. Simpson has not shown by clear and convincing evidence that his trial counsel was constitutionally ineffective.

Questioning of Juror 35 during voir dire reflects equivocal and ambiguous responses. Simpson readily admits in his petition that "he equivocated about whether he could listen to the evidence, and said that he would have to hear it first," (Dkt. #1, pg. 6). Ambiguous testimony "is not unusual on voir dire examination." *Patton*, 467 U.S. at 1039; *see also Seigfried*, 372 F. App'x at 539 (finding that Juror 2's ambiguous voir dire statements—such as her "strong values … might effect [sic] how I would come to a conclusion," and she was "not sure," but she "thought she would" have a hard time weighing the facts and examining testimony—did not show that she was impartial). A potential juror's equivocal and ambiguous responses during voir dire do not show "fixed opinions that [he or she] could not judge impartially the guilty of the defendant." *See Santos v. Davis*, 2018 WL 3978372, at *5 (W.D. Tex. Aug. 20, 2018). In other words, equivocal and/or ambiguous responses do not indicate that the potential juror is actually biased. Ambiguous or

12

vague answers are, necessarily, not explicit statements. *Seigfried*, 372 F. App'x at 540 ("Although the statements made by Juror 2 hinted at possible bias against Seigfried, Juror 2 never explicitly stated that she could not be an impartial juror.").

Simpson focuses heavily on *Virgil* in support of his contentions. *Virgil*, however, is wholly distinguishable from the facts here. In *Virgil*, one prospective juror stated during voir dire that "his relationship with law enforcement officers would preclude him from serving as an impartial juror," while another prospective juror remarked that he could not be "fair and impartial." 446 F.3d at 609-610. The Fifth Circuit, in granting Virgil habeas relief, held that such unchallenged statements demonstrated the jurors' actual bias because they had "unequivocally expressed that they could not sit as fair and impartial jurors." *Id*. at 613. The Fifth Circuit held that trial counsel's failure to utilize a peremptory or for-cause challenge on these jurors was deficient performance. *Id*. at 610.

Here, unlike the two jurors in *Virgil*, Juror 35's responses were equivocal and ambiguous. When the State asked Juror 35 whether he could set aside his life experience, Juror 35 responded that "it would have to depend on the case." The State then asked if he could listen to the facts and base his verdict only on that evidence, Juror 35 stated that he "would have to listen to it first." These are equivocal—or vague, ambiguous—responses that are not explicit statements that he could not be fair or impartial. Similarly, when asked if cases wherein he was involved with law enforcement caused him to have bias or prejudice in this case, Juror 35 remarked "possibly." Unlike the juror in *Virgil*, "possibly" is a far cry from a direct statement that one could not be impartial. Juror 35's statement that he "probably" knew most of the local law enforcement witnesses and that he would listen to them having worked with them are additional non-explicit responses. Once again, these statements do not expressly show actual bias.

13

For example, in *Torres v. Thaler*, the Fifth Circuit determined that *Virgil* did not apply to Torres's claims of juror bias where, unlike *Virgil*, the juror's "statements on the record during voir dire were vague" and "did not expressly indicate prejudice." 395 F. App'x 101, 107-08 (5th Cir. 2010) ("In *Virgil*, the two questionable jurors provided specific statements during voir dire indicating why they could not be fair and impartial."). The juror in *Torres* stated that "he thought his experiences would affect his impartiality," and he "would 'probably' be more for the State. *Id*. The Fifth Circuit determined that the juror's statements were vague and did not expressly indicate a clear prejudice, ultimately rejecting the claim. *Id*. at 108 ("He said he *thought* his experiences would affect his impartiality and that he would 'probably' be more for the State, but unlike the *Virgil* jurors, none of Gorman's responses definitively showed he would not be impartial.").

Precedent indicates that equivocal, ambiguous, or vague responses during voir dire do not demonstrate actual bias. *See*, *e.g.*, *Flores v. Davis*, 734 F. App'x 278, 279 (5th Cir. 2018) (per curiam) (holding that statement from veniremember 'th[ought] his past experience as a crime victim would affect [his] ability to be fair' was an ambiguous statement … distinguishable from the responses deemed biased in *Virgil*."); *Seigfried*, 372 F. App'x at 539 (holding that Juror 2's statement that her "strong values … might effect [sic]" how she would come to a conclusion" was not evidence of bias).

The facts and analyses articulated in *Torres*, *Flores*, and *Seigfried* apply here to Simpson's case. Juror 35's responses do not evince "fixed opinions" like those in *Virgil*. Juror 35 never explicitly stated that he could not be fair and impartial. He did not remark that his life experiences precluded him from acting as a fair and impartial juror. *See, e.g.*, *United States v. Huerra*, 884 F.3d 511, 517 (5th Cir. 2018) ("A jury is unfair and partial if the jurors had such fixed opinions that they could not judge impartiality the guilt of the defendant.") (internal quotations and citations

14

omitted). The lack of explicit statements indicating actual bias renders *Virgil* inapplicable to Simpson's case. Moreover, given the precedent outlined above, this Court cannot conclude that the state habeas court's rejection of this claim—finding that trial counsel was not ineffective for failing to strike Juror 35—was objectively unreasonable or so lacking in justification. *See Seigfried*, 372 F. App'x at 540 ("In contrast to the statements made by Juror 2 during voir dire, both this court and other courts have found actual bias where a juror forthrightly states that she could not be fair and impartial.").

Simpson insists that he was prejudiced by trial counsel's failure to strike Juror 35. Citing *Virgil*, he maintains that the failure to strike Juror 35 was such a serious error that it destroys any confidence in the outcome. *See Virgil*, 446 F.3d at 613. However, finding that counsel was constitutionally ineffective under *Strickland* requires a showing of both deficient performance and ensuing prejudice. Here, as explained above, Simpson's case is unlike *Virgil* because Juror 35 did not articulate explicit statements that he could not be impartial or fair; accordingly, unlike *Virgil*, Simpson failed to demonstrate deficient performance. Given that Juror 35 did not make explicit or forthright statements indicating "fixed opinions" or that he could not be fair or impartial, Simpson failed to show that counsel's tactics were so ill chosen that it permeated the entire trial with obvious unfairness. *Teague*, 60 F.3d at 1172.

Furthermore, Simpson maintains that the state habeas court's findings are erroneous because they conflict with the record. Specifically, he highlights that the state habeas court explicitly found that he failed to identify Juror 35 in his state habeas application—despite addressing Juror 35 in his attached memorandum of law. Indeed, the record confirms that Simpson identified Juror 35 in his memorandum of law in his state habeas application, (Dkt. #7-23, pg. 1294).

15

The denial of Simpson's state habeas application, however, was not an unreasonable application of clearly established law. As mentioned, the record reflects that Juror 35 did not articulate fixed opinions showing that he could not be fair or impartial; rather, his statements were equivocal, ambiguous, and vague. This Court may only grant habeas relief after a showing of "manifest error," which is not present here. *See King v. Lynaugh*, 850 F.2d 1055, 1058 (5th Cir. 1988) (explaining that "the trial court's findings of juror impartiality will be overturned only for manifest error.").

Additionally, Judge Kennedy presided over both Simpson's trial and state habeas proceeding. Her findings are therefore entitled to additional deference under the AEDPA. *See Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) ("The presumption [of correctness] is especially strong when the state habeas court and the trial court are one in the same.") (citing *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000)). She explicitly determined—based on her own recollection of the trial and trial counsel's years of experience before the state court—that the affidavit was credible, and that Simpson failed to make a showing under *Strickland*. Accordingly, even though the state habeas court found that Simpson failed to identify Juror 35 in his writ application, given deference applied to both explicit and implicit findings, Simpson is not entitled to federal habeas relief.

## VI. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Although Petitioner has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v.*

*Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'"  *Buck*, 137 S. Ct. 773 (quoting *Miller-El*, 537 U.S. at 336).  Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

Here, Simpson failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings.  He is not entitled to a certificate of appealability.

## RECOMMENDATION

Accordingly, it is recommended that Petitioner Simpson federal habeas corpus petition be denied and that this case be dismissed, with prejudice. It is further recommended that Simpson be denied a certificate of appealability *sua sponte*.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 11th day of May, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE